| | | |
|---|---|---|
| RYAN deM. JENNINGS, Ph.D.<br>10141 Cottage Lane, N.W.<br>Frostburg, Maryland 21532 | * | IN THE |
| | * | CIRCUIT COURT |
| Plaintiff | * | FOR ALLEGANY COUNTY, |
| v. | * | MARYLAND |
| FROSTBURG STATE UNIVERSITY<br>101 Braddock Road<br>Frostburg, Maryland 21532 | * | |
| | * | Case No.: C-01-CV-20-000315 |
| Serve: Ronald H. Nowaczyk, Ph.D.<br>President<br>Office of the President<br>Frostburg State University<br>101 Braddock Road<br>Frostburg, Maryland 21532 | * | |

Serve: Ronald H. Nowaczyk, Ph.D.
     President             *
     Office of the President
     Frostburg State University    *
     101 Braddock Road
     Frostburg, Maryland 21532    *

                                       *

BOARD OF REGENTS, UNIVERSITY
SYSTEM OF MARYLAND        *
701 E. Pratt Street
Baltimore, Maryland 21202     *

     Serve: Linda R. Gooden, Chair   *
          Board of Regents
          701 E. Pratt Street      *
          Baltimore, Maryland 21202

                                         *

UNIVERSITY SYSTEM OF MARYLAND
3300 Metzerott Road           *
Adelphi, Maryland 20783

                                       *

     Serve: Jay A. Perman, M.D., Chancellor
          University System of Maryland   *
          300 Metzerott Road, Suite 2C
          Adelphi, Maryland 20783     *

STATE OF MARYLAND         *
d/b/a Frostburg State University
101 Braddock Road           *
Frostburg, Maryland 21532

                                       *

Serve: Brian Frosh, Attorney General          *
      Office of the Attorney General
      200 St. Paul Place                            *
      Baltimore, Maryland 21202
                                     *

and                                                                    *

RONALD H. NOWACZYK, Ph.D.
(Individually, and in His Official Capacity)   *
Frostburg State University
Office of the President                           *
101 Braddock Road
Frostburg, Maryland 21532                     *

      Defendants                                   *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT
## AND JURY DEMAND

Plaintiff Ryan deM. Jennings, Ph.D., by and through his undersigned counsel, hereby brings this action for monetary damages and other relief against Defendants Frostburg State University, Board of Regents of the University System of Maryland, University System of Maryland, State of Maryland, and Ronald H. Nowaczyk, Ph.D., and states as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Ryan deM. Jennings, Ph.D. is an adult resident of the State of Maryland currently residing at 10141 Cottage Lane, N.W. in Frostburg, Allegany County, Maryland.  He is a former employee of Defendants.

2.     Defendant Frostburg State University is a public institution of higher learning located at 101 Braddock Road in Frostburg, Allegany County, Maryland, and is

2

one of the many institutions overseen and administered by Defendant University System of Maryland and its Board of Regents.

3.      Defendant State of Maryland is a state governmental entity within the meaning of state and federal law.  Defendants Frostburg State University and University System of Maryland are agencies of Defendant State of Maryland.

4.      Defendant Ronald H. Nowaczyk, Ph.D. was at all times pertinent, and remains, President of Defendant Frostburg State University.  He is being sued in both his individual and official capacities.

5.      At all times pertinent, Defendants have had well in excess of 500 employees and are an "employer" within the meaning and scope of the statutes under which Plaintiff is bringing his claims.

6.      At all times pertinent, Defendants were programs or activities which have received federal financial assistance within the meaning of 29 U.S.C. § 794.

7.      This action arose from conduct occurring in Allegany County, Maryland, and is based upon the acts and omissions of Defendants and their actual or apparent agents, servants, and employees.

8.      This Honorable Court may exercise personal jurisdiction over Defendants pursuant to Md. Code Ann., Courts & Jud. Proc. § 6-102 and/or § 6-103.  Venue is appropriate under Md. Code Ann., Courts & Jud. Proc. § 6-201 and Md. Code Ann., State Gov't § 20-1013(b).

9.     To the extent necessary, Plaintiff has exhausted his administrative remedies and otherwise fulfilled all conditions precedent to bringing the claims asserted below. *See infra* ¶¶ 26-28.

## STATEMENT OF FACTS

10.     Plaintiff, at all times pertinent, has required the use of a custom power wheelchair, as well as numerous other adaptive devices, due to a genetic condition that renders him non-ambulatory.  Plaintiff disability is significant, obvious to anyone with whom he interacts, and Defendants herein were aware of his physical limitations.

11.     In or about May of 2017, Plaintiff was hired by Defendants as a full-time, tenure-track Assistant Professor in Biology.[1]  His starting annual salary was $56,500, and he was entitled to other benefits of employment, including retirement benefits.  His actual appointment to the position began in or about August of 2017.

12.     Approximately 16 months later, by letter dated December 13, 2018, the President of Frostburg State University, Defendant Ronald H. Nowaczyk, Ph.D., informed Plaintiff that his contract with the University would "not be renewed," and that his "employment at Frostburg State University [would] cease on May 23, 2019."

13.     Despite its unanticipated unjustified brevity, Plaintiff's time at Frostburg State University was filled with a number of achievements.  Among other things, in addition to teaching, Plaintiff was awarded a PELEF grant to initiate student research

---

[1] Plaintiff came to Maryland from out-of-state specifically to take on this position.  In so doing, he had to incur significant expenses to move and to purchase and remodel a home to make it wheelchair accessible.  He estimates that, all told, he spent approximately $50,000 just so he could work at Frostburg State University, which he considered a dream job.

4

projects; was a co-author on a published, peer-reviewed paper; served on the Faculty Workload and Compensation Subcommittee as well as the Americans with Disabilities Act and Equal Employment Opportunity Advisory Group; served as an abstract reviewer for the Annual Biomedical Research Conference for Minority Students; and served as a member of a graduate student's thesis committee. Outside of the University setting, Plaintiff served as a board member of a local disability service and advocacy group, called "Resources for Independence," that assisted disable residents of Allegany, Garrett, and Washington counties. He also worked on an initiative to make the city of Frostburg more accessible to disabled people.

14.     Throughout his period of employment with Defendants, Plaintiff could perform the essential functions of his job, with or without a reasonable accommodation.

15.     As explained below, the events leading up to Defendants' non-renewal determination on December 13, 2018 give rise to the various legal claims being asserted by Plaintiff in this Complaint.

16.     The pertinent sequence of events began in the fall of 2017. At that time, and on numerous occasions thereafter, Plaintiff sought several modifications to his physical workspace as reasonable accommodations for his disability. Specifically, Plaintiff requested that power door openers be installed on the doors to the bathrooms and to the laboratory.[2] He also asked for an accessible demonstration bench and wider aisles, both of

_____

[2] Among the occasions he made this request, Plaintiff brought it to the attention of his Interim Dean, Dorothy I. Campbell, Ph.D., in a November 2018 letter to her. *See infra* Footnote 5.

which would assist him with his teaching.  These accommodations were not made by Defendants, all the way up until the time Plaintiff's employment ended.

17.     In the early years of any full-time, tenure-track assistant professor's time at Frostburg State University, Defendants make use of an evaluative process that culminates with the University President's decision to renew or not renew said assistant professor's contract for an addition school year.  Before this decision is made by the President, the process starts with a "Renewal Evaluation" prepared by various members of the department faculty, followed by separate recommendations for renewal or non-renewal by the Dean of the college at issue and the Provost for the University.

18.     In this process, Plaintiff was treated disparately and discriminatorily on account of his disability.

19.     For example, despite the fact that Plaintiff met or exceeded the faculty handbook's standards for the evaluative criteria, Defendants chose to nonetheless focus heavily, and almost exclusively, upon the reviews generated by students of Plaintiff.

20.     This process created several discriminatory dynamics.  First, and putting aside that Plaintiff also received rave reviews from many of his students, Defendants were relying upon the implicit (and perhaps not so implicit) discriminatory biases that exist within students against Plaintiff as a wheelchair-bound professor.  Defendants expressed awareness of this aspect of the process,[3] but still chose to ignore it.

---

[3]  By way of example, an earlier renewal evaluation of Plaintiff, from back in January 2018, explicitly stated that student reviews "have been shown to have many biases."  And Plaintiff himself made this issue known to Defendants.  For example, in his November 2018 correspondence to his Interim Dean, Dorothy I. Campbell, Ph.D., Plaintiff stated that "I am in a position of authority over the students, yet unlike other faculty in the Department and College, I have no physical stature over them."  In this same

21.    Second, and more importantly, whereas the student reviews were the primary basis for Plaintiff's non-renewal decision, they were all but ignored in making the assessment to renew or not renew other assistant professors.  Plaintiff is aware of this dynamic because he observed it personally when he was called upon to review fellow assistant professors.  And other faculty members were aware of this as well.  Able-bodied assistant professors whose student reviews were scrutinized far less harshly and who were otherwise permitted, unlike Plaintiff, to essentially "sail through" the Renewal Evaluation process include, but are not limited to, Daniel Hocking, Ph.D., Franklin Hughes, D.C., and Jered Studinski, Ph.D.   Finally, the over-reliance upon student reviews in evaluating Plaintiff was even more egregious considering that no member of his department had ever even taken the time to witness Plaintiff's teaching style and process in person.

22.    Defendants, rather astonishingly, also chose to take into account, in making their non-renewal decision regarding Plaintiff, the fact that Plaintiff had, according to his students, failed to physically demonstrate certain techniques in conducting his labs.  Putting aside that no one ever told Plaintiff there was a need to engage in such demonstrations, the highlighting of his non-performance of this task discriminatorily fails to account for the fact that Plaintiff literally cannot do this as a disabled worker.  As stated by Plaintiff himself in his November 2018 correspondence with his Interim Dean, Dorothy I. Campbell, Ph.D.,[4] after he became aware of this issue, "Given that the Department now mandates the

---

correspondence, Plaintiff went on to say that "[i]t is plausible that a direct answer to a question could be misconstrued, which is an example of disability bias."

[4] This same (plus additional) correspondence would also subsequently be shared by Plaintiff, in late November 2018, with the Provost, Elizabeth A. Throop, Ph.D.

demonstration of every technique, which is physically not possible for me to do, I ask that the Department work with me to obtain reasonable accommodations that would enable me to fulfill the obligation."[5]

23.    Prior to Defendant Nowaczyk's December 13, 2018 non-renewal decision regarding Plaintiff, and also prior to the November 15, 2018 and November 29, 2018 non-renewal recommendations of Dr. Campbell and Provost Elizabeth A. Throop, Ph.D., respectively, they were all either personally aware, or made aware by Plaintiff in writing, of the facts and circumstances set forth in this Statement of Facts.[6]   They knew how Plaintiff had been discriminatorily mistreated.   But Plaintiff was non-renewed anyway.

24.    He was also non-renewed on December 13, 2018 while his appeal of the aforementioned discriminatory non-renewal recommendations of Drs. Campbell and Throop was still pending before the Faculty Appeals Committee.   This appeal, which was filed by Plaintiff on or about December 5, 2018, was provided for in the University's faculty handbook.   Ultimately, no decision was ever made by the Committee in relation to this appeal.

---

[5]   In this same correspondence, Plaintiff later addressed this issue again as follows: "The Department criticizes issues related to my disability, which requires reasonable accommodations that have not been discussed or provided."   Plaintiff goes on to say that his "previously requested accommodations (door openers) have not been installed."

[6]   Additionally, they were all aware of, and fully adopted the reasoning of, the initial discriminatory "Renewal Evaluation" prepared concerning Plaintiff.   Indeed, Dr. Throop expressly stated, in her November 29, 2018 correspondence to Plaintiff, that she "share[d] the concerns expressed by [Plaintiff's] department and [the] dean concerning [his] teaching performance."   In turn, Defendant Nowaczyk stated in his December 13, 2018 letter to Plaintiff that his decision was "[b]ased on [his] conversations with the Provost."

25.     As a result of the non-renewal, and in keeping with the December 13, 2018 letter from Defendant Nowaczyk, Plaintiff's employment with Defendants came to an end in May 2019, at the conclusion of the spring semester.  Following the termination of his employment, Plaintiff would thereafter remain out-of-work until the fall of 2020 despite his repeated good faith efforts to secure a new position.

26.     On or about March 14, 2019, Plaintiff filed an executed Charge of Discrimination with the U.S. EEOC, which was cross-filed with the Maryland Commission on Civil Rights.  In the Charge, Plaintiff asserted, consistent with the facts presented above, that he was discriminated and retaliated against on the basis of his disability.  On the Charge form, the boxes for "disability" and "retaliation" were both checked in relation to the types of discrimination he claimed to have suffered.

27.     On or about March 19 2019, a Notice of the Charge of Discrimination was provided by the U.S. EEOC to Frostburg State University.  The Charge referenced both the University and Defendant Nowaczyk.

28.     This Complaint is being filed more than 180 days after Plaintiff's filing of the Charge.[7]  *See* Md. Code Ann., State Gov't § 20-1013(a).

---

[7] The EEOC subsequently issued Plaintiff a Notice Suit Rights, which allowed Plaintiff 90 days to pursue his claims under Title I of the Americans with Disabilities Act (hereinafter "ADA").  Those 90 days have elapsed, but Plaintiff is not pursuing claims under Title I of the ADA in this Complaint.

## CAUSES OF ACTION

### COUNT I – Violation of the Maryland Fair Employment Practices Act
### (Disability Discrimination)

29.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 28, as if each were set forth herein verbatim.

30.     Defendants were Plaintiff's "employer" within the scope and meaning of Maryland's Fair Employment Practices Act (hereinafter "FEPA"), or they can otherwise be held liable under said Act.  *See* Md. Code Ann., State Gov't §§ 20-601, 20-801, 20-902, and 20-903.

31.     Plaintiff's physical impairment clearly and obviously constitutes a disability, as that term is defined by, and construed under, Maryland law. *See id*. at § 20-601.

32.     At all times pertinent, Plaintiff was a qualified individual with a disability who could perform the essential functions of his job, with or without a reasonable accommodation.

33.     In subjecting Plaintiff to the mistreatment described herein, Defendants engaged in disability discrimination in violation of Maryland's FEPA.

34.     For example, Defendants repeatedly disregarded Plaintiff's request for, and need for, reasonable accommodations.

35.     Defendants were also discriminatorily critical of Plaintiff for not being able to perform physical demonstrations in the classroom/lab the way an able-bodied assistant professor could despite the fact that the need for such demonstrations was never made

known to him, was not an essential duty, and was expected to be performed by him without any accommodation that might have made it more feasible.

36.　　As detailed above, in evaluating Plaintiff's renewal or non-renewal for another year with the University, Defendants held plaintiff to a different, and higher, standard in assessing his skills than his fellow able-bodied assistant professors. Despite the fact that Plaintiff exceeded the standards for all of the evaluative criteria in the faculty handbook, Defendants overly relied upon, and weighed very heavily, the reviews of students despite the fact that they were aware of the likely bias they contained. Critically, Defendants also did this despite the fact that they did not do it for Plaintiff's fellow able-bodied assistant professors who were up for renewal consideration.

37.　　Defendants also non-renewed Plaintiff despite the pendency of an appeal with the Faculty Appeals Committee.

38.　　Defendants' improper actions were motivated by Plaintiff's disability.

39.　　Plaintiff was subjected to disadvantageous terms, conditions, and criteria of employment which able-bodied employees did not have to deal with.

40.　　Defendants' improper acts and omissions were also undertaken to harass and/or interfere with Plaintiff in the exercise or enjoyment of his rights under the law.

41.　　Defendant's discriminatory actions caused the non-renewal and termination of his employment and substantial monetary losses.

42.　　Defendants' violations of Maryland's FEPA were willful.

43.　　Defendants' violations of Maryland's FEPA were intentional.

44.　　Defendant's violations of the Maryland's FEPA were malicious.

45.     As a direct and proximate result of Defendants' violations of Plaintiff's rights, Plaintiff has suffered, and will continue to suffer, both economic and non-economic harm, including, but not limited to, lost wages due to his non-renewal, denial of promotional opportunities, denial of tenure, loss of pension benefits, loss of other benefits, loss of prestige, loss of status, inconvenience, insult, loss of enjoyment of life, embarrassment, mental anguish, stress, and the attorney's fees and costs of this action.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the employment practices by Defendants complained of herein were unlawful; that he be awarded judgment against Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, back pay, back benefits, and compensatory damages) in an amount in excess of $75,000,[8] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to re-hire Plaintiff in his former (or substantially similar) position or that he be awarded front pay and front benefits in lieu of reinstatement; and for all other and further relief that this Court or a jury deems appropriate.

## COUNT II – Violation of § 504 of the Rehabilitation Act, as amended
### (Disability Discrimination)

46.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 28 above, as if each were set forth herein verbatim.

47.     Defendants were Plaintiff's employer within the meaning and scope of the Rehabilitation Act, as amended (hereinafter "Rehabilitation Act").

---

[8] *See* Md. R. 2-305.

12

48.     At all times pertinent, Defendants were the recipients of federal financial assistance.

49.     At all times pertinent, Plaintiff was clearly and obviously disabled, as that term is defined by, and construed under, the Rehabilitation Act.

50.     At all times pertinent, Plaintiff was able to perform the essential functions of his job, with or without a reasonable accommodation.

51.     Plaintiff falls within the class of individuals protected by the provisions of the Rehabilitation Act.

52.     In subjecting Plaintiff to the treatment described herein, Defendants engaged in disability discrimination in violation of the Rehabilitation Act.

53.     For example, Defendants repeatedly disregarded Plaintiff's request for, and need for, reasonable accommodations.

54.     Defendants were also discriminatorily critical of Plaintiff for not being able to perform physical demonstrations in the classroom/lab the way an able-bodied assistant professor could despite the fact that the need for such demonstrations was never made known to him, was not an essential duty, and was expected to be performed by him without any accommodation that might have made it more feasible.

55.     As detailed above, in evaluating Plaintiff's renewal or non-renewal for another year with the University, Defendants held plaintiff to a different, and higher, standard in assessing his skills than his fellow able-bodied assistant professors. Despite the fact that Plaintiff exceeded the standards for all of the evaluative criterial in the faculty handbook, Defendants overly relied upon, and weighed very heavily, the reviews of

13

students despite the fact that they were aware of the likely bias they contained. Critically, Defendants also did this despite the fact that they did <u>not</u> do it for Plaintiff's fellow able-bodied assistant professors who were up for renewal consideration.

56.     Defendants also non-renewed Plaintiff despite the pendency of an appeal with the Faculty Appeals Committee.

57.     Defendants' improper actions were taken on account of Plaintiff's disability.

58.     Plaintiff was subjected to disadvantageous terms, conditions, and criteria of employment which able-bodied employees did not have to deal with.

59.     Defendants' improper acts and omissions were also undertaken to harass and/or interfere with Plaintiff in the exercise or enjoyment of his rights under the law.

60.     Defendant's discriminatory actions caused the non-renewal and termination of his employment and substantial monetary losses.

61.     Defendants' violations of the Rehabilitation Act were willful.

62.     Defendants' violations of the Rehabilitation Act were intentional.

63.     Defendant's violations of the Rehabilitation Act were malicious.

64.     As a direct and proximate result of Defendants' violations of Plaintiff's rights, Plaintiff has suffered, and will continue to suffer, both economic and non-economic harm, including, but not limited to, lost wages due to his non-renewal, denial of promotional opportunities, denial of tenure, loss of pension benefits, loss of other benefits, loss of prestige, loss of status, inconvenience, insult, loss of enjoyment of life, embarrassment, mental anguish, stress, and the attorney's fees and costs of this action.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the employment practices by Defendants complained of herein were unlawful; that he be awarded judgment against Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, back pay, back benefits, and compensatory damages) in an amount in excess of $75,000,[9] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to re-hire Plaintiff in his former (or substantially similar) position or that he be awarded front pay and front benefits in lieu of reinstatement; and for all other and further relief that this Court or a jury deems appropriate.

### COUNT III – Violation of the Maryland Fair Employment Practices Act
### (Retaliation)

65.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 28, as if each were set forth herein verbatim.

66.     Defendants were Plaintiff's "employer" within the scope and meaning of Maryland's FEPA, or they can otherwise be held liable under said Act. *See* Md. Code Ann., State Gov't §§ 20-601, 20-801, 20-902, and 20-903.

67.     Plaintiff's physical impairment clearly and obviously constitutes a disability, as that term is defined by, and construed under, Maryland law. *See id.* at § 20-601.

68.     At all times pertinent, Plaintiff was a qualified individual with a disability who could perform the essential functions of his job, with or without a reasonable accommodation.

---

[9] *See* Md. R. 2-305.

15

69.     Plaintiff engaged in the protected activities of repeatedly requesting reasonable accommodations from Defendants and, particularly in the weeks prior to his non-renewal, communicating with Defendants to speak out in support of himself and oppose the discriminatory mistreatment he was being subjected to by them.

70.     The actions taken by Defendants in response thereto, including, but not limited to, failing to engage in good faith in an interactive process; failing to make an individualized assessment of his needs; failing to provide effective accommodations; failing to subject him to the same terms, conditions, and criteria of employment as other, able-bodied employees; and, most significantly, non-renewing and terminating his employment, were all undertaken in retaliation for Plaintiff having engaged in the aforementioned protected activities.

71.     Rather than actually take remedial action based upon Plaintiff's protected activities -- as they should have -- Defendants were instead motivated thereby to rid themselves of him and his repeated expressions of his legal rights and his opposition to their discriminatory mistreatment of him.

72.     As a direct and proximate result of Defendants' violations of Plaintiff's rights, Plaintiff has suffered, and will continue to suffer, both economic and non-economic harm, including, but not limited to, lost wages due to his non-renewal, denial of promotional opportunities, denial of tenure, loss of pension benefits, loss of other benefits, loss of prestige, loss of status, inconvenience, insult, loss of enjoyment of life, embarrassment, mental anguish, stress, and the attorney's fees and costs of this action.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the employment practices by Defendants complained of herein were unlawful; that he be awarded judgment against Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, back pay, back benefits, and compensatory damages) in an amount in excess of $75,000,[10] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to re-hire Plaintiff in his former (or substantially similar) position or that he be awarded front pay and front benefits in lieu of reinstatement; and for all other and further relief that this Court or a jury deems appropriate.

### COUNT IV – Violation of § 504 of the Rehabilitation Act, as amended (Retaliation)

73.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 28 above, as if each were set forth herein verbatim.

74.     Defendants were Plaintiff's employer within the meaning and scope of the Rehabilitation Act.

75.     At all times pertinent, Defendants were the recipients of federal financial assistance.

76.     At all times pertinent, Plaintiff was clearly and obviously disabled, as that term is defined by, and construed under, the Rehabilitation Act.

77.     At all times pertinent, Plaintiff was able to perform the essential functions of his job, with or within a reasonable accommodation.

---

[10] *See* Md. R. 2-305.

78.     Plaintiff falls within the class of individuals protected by the provisions of the Rehabilitation Act.

79.     Plaintiff engaged in the protected activities of repeatedly requesting reasonable accommodations from Defendants and, particularly in the weeks prior to his non-renewal, communicating with Defendants to speak out in support of himself and oppose the discriminatory mistreatment he was being subjected to by them.

80.     The actions taken by Defendants in response thereto, including, but not limited to, failing to engage in good faith in an interactive process; failing to make an individualized assessment of his needs; failing to provide effective accommodations; failing to subject him to the same terms, conditions, and criteria of employment as other, able-bodied employees; and, most significantly, non-renewing and terminating his employment, were all undertaken in retaliation for Plaintiff having engaged in the aforementioned protected activities.

81.     Rather than actually take remedial action based upon Plaintiff's protected activities -- as they should have -- Defendants were instead motivated thereby to rid themselves of him and his repeated expressions of his legal rights and his opposition to their discriminatory mistreatment of him.

82.     As a direct and proximate result of Defendants' violations of Plaintiff's rights, Plaintiff has suffered, and will continue to suffer, both economic and non-economic harm, including, but not limited to, lost wages due to his non-renewal, denial of promotional opportunities, denial of tenure, loss of pension benefits, loss of other benefits,

loss of prestige, loss of status, inconvenience, insult, loss of enjoyment of life, embarrassment, mental anguish, stress, and the attorney's fees and costs of this action.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the employment practices by Defendants complained of herein were unlawful; that he be awarded judgment against Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, back pay, back benefits, and compensatory damages) in an amount in excess of $75,000,[11] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to re-hire Plaintiff in his former (or substantially similar) position or that he be awarded front pay and front benefits in lieu of reinstatement; and for all other and further relief that this Court or a jury deems appropriate.

### COUNT V – Violation of the Maryland Fair Employment Practices Act (Failure to Accommodate)

83.      Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 28, as if each were set forth herein verbatim.

84.      Defendants were Plaintiff's "employer" within the scope and meaning of Maryland's FEPA, or they can otherwise be held liable under said Act. *See* Md. Code Ann., State Gov't §§ 20-601, 20-801, 20-902, and 20-903.

85.      Plaintiff's physical impairment clearly and obviously constitutes a disability, as that term is defined by, and construed under, Maryland law. *See id.* at § 20-601.

---

[11] *See* Md. R. 2-305.

86.    At all times pertinent, Plaintiff was a qualified individual with a disability who was able to perform the essential functions of his job, with or without a reasonable accommodation.

87.    Plaintiff made Defendants aware of his need for reasonable accommodations, and requested these accommodations on numerous occasions during his employment. *See supra* ¶ 16.

88.    Defendants took no action in response to these requests.  As such, Defendants clearly failed to accommodate Plaintiff, which is an unlawful employment practice.

89.    As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff suffered damages.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the employment practices by Defendants complained of herein were unlawful; that he be awarded judgment against Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, back pay, back benefits, and compensatory damages) in an amount in excess of $75,000,[12] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to re-hire Plaintiff in his former (or substantially similar) position or that he be awarded front pay and front benefits in lieu of reinstatement; and for all other and further relief that this Court or a jury deems appropriate.

---

[12] *See* Md. R. 2-305.

**COUNT VI – Violation of § 504 of the Rehabilitation Act, as amended**
**(Failure to Accommodate)**

90.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 28, as if each were set forth herein verbatim.

91.     Defendants were Plaintiff's "employer" within the scope and meaning of the Rehabilitation Act.

92.     At all times pertinent, Defendants were the recipient of federal financial assistance.

93.     Plaintiff's physical impairment clearly and obviously constitutes a disability, as that term is defined by, and construed under, the Rehabilitation Act.

94.     At all times pertinent, Plaintiff was a qualified individual with a disability who was able to perform the essential functions of his job, with or without a reasonable accommodation.

96.     Plaintiff made Defendants aware of his need for reasonable accommodations, and requested these accommodations on numerous occasions during his employment. *See supra* ¶ 16.

97.     Defendants took no action in response to these requests.  As such, Defendants clearly failed to accommodate Plaintiff, which is an unlawful employment practice.

98.     As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff suffered damages.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the employment practices by Defendants complained of herein were unlawful; that he be

awarded judgment against Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, back pay, back benefits, and compensatory damages) in an amount in excess of $75,000,[13] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to re-hire Plaintiff in his former (or substantially similar) position or that he be awarded front pay and front benefits in lieu of reinstatement; and for all other and further relief that this Court or a jury deems appropriate.

Respectfully submitted,

_____/s/  Neil R. Lebowitz_____
Neil R. Lebowitz, No.: 9706250253
Lebowitz Law Firm
8180 Lark Brown Road, Suite 201
Elkridge, Maryland 21075
neil@lebowitzlegal.com
410-730-9010
Counsel for Plaintiff Ryan deM. Jennings, Ph.D.

---

[13] *See* Md. R. 2-305.

22

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,


_____/s/  Neil R. Lebowitz_____
Neil R. Lebowitz, No.: 9706250253
Lebowitz Law Firm
8180 Lark Brown Road, Suite 201
Elkridge, Maryland 21075
neil@lebowitzlegal.com
410-730-9010
Counsel for Plaintiff Ryan deM. Jennings, Ph.D.