IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RYAN deM. JENNINGS,
   *Plaintiff*,

v.

FROSTBURG STATE
UNIVERSITY, *et al*.,
   *Defendants*.

Civil No. ELH-21-656

**MEMORANDUM OPINION**

Plaintiff Ryan deM. Jennings, Ph.D., a disabled biology professor, was hired to teach at Frostburg State University ("FSU" or "Frostburg"). After his contract was not renewed, Jennings filed an employment discrimination action against five defendants: Frostburg, a public institution of higher learning; the Board of Regents of the University System of Maryland (the "Board"); the University System of Maryland ("USM"); the State of Maryland (the "State"); and the president of Frostburg, Ronald H. Nowaczyk, Ph.D., in both his individual and official capacities. *See* ECF 2 (the "Complaint").¹ He alleges that he is non-ambulatory but able to perform the essential functions of his job as an Assistant Professor in Biology. *Id.* ¶¶ 10, 11, 14.

The Complaint asserts claims for disability discrimination (Counts I and II); retaliation (Counts III and IV); and failure to accommodate (Counts V and VI). The claims are lodged under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as well as the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2020 Repl. Vol.) §§ 20-601 *et seq.* of the State Government

---

¹ Suit was filed in the Circuit Court for Allegany County, Maryland. Defendants removed the case to federal court, pursuant to 28 U.S.C. §§ 1331, 1441. *See* ECF 1 ("Notice of Removal"). Subject matter jurisdiction is founded on 28 U.S.C. § 1331, as to plaintiff's Rehabilitation Act claim. ECF 1, ¶ 3. And, the Court has "supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. §1367." *Id.*

Article ("S.G."). *See* ECF 2, ¶¶ 29-98. Jennings seeks monetary damages, inclusive of back pay, back benefits, and compensatory damages, as well as "pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs." ECF 2 at 12. In addition, plaintiff seeks reinstatement or, in the alternative, an award of "front pay and front benefits." *Id.*

Defendants have filed a partial motion to dismiss the Complaint. ECF 12. In particular, they seek to dismiss the suit as to the Board, USM, and Dr. Nowaczyk. The motion is supported by a memorandum of law. ECF 12-1 (collectively, the "Motion"). Plaintiff opposes the Motion (ECF 16), supported by a memorandum of law. ECF 16-1 (collectively, the "Opposition"). Defendants have replied. *See* ECF 19.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.    Factual Background[2]

Plaintiff asserts that he requires "the use of a custom power wheelchair, as well as numerous other adaptive devices, due to a genetic condition that renders him non-ambulatory." ECF 2, ¶ 10. Moreover, Jennings describes his disability as "significant, obvious to anyone with whom he interacts, and Defendants herein were aware of his physical limitations." *Id.* Nevertheless, plaintiff alleges that, at all relevant times, he "could perform the essential functions of his job, with or without a reasonable accommodation." *Id.* ¶ 14.

---

[2] At this juncture, the Court assumes the truth of the allegations. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Frostburg is "a public institution of higher learning . . ., and is one of the many institutions overseen and administered by Defendant University System of Maryland and its Board of Regents." *Id.* ¶ 2. Nowaczyk has been President of FSU at all relevant times. *Id.* ¶ 4.

In May 2017, plaintiff was "hired by Defendants as a full-time tenure-track Assistant Professor in Biology.[ ]" *Id.* ¶ 11. His "position began in or about August of 2017." *Id.* Jennings "came to Maryland from out-of-state specifically to take on this position," and in the process of doing so, he "incur[red] significant expenses to move and to purchase and remodel a home to make it wheelchair accessible." *Id.* ¶ 11 n.1. In sum, Jennings estimates that "he spent approximately $50,000 just so he could work at Frostburg State University, which he considered a dream job." *Id.* However, about sixteen months later, by letter dated December 13, 2018, Nowaczyk "informed Plaintiff that his contract with the University would not be renewed, and that his employment at Frostburg State University [would] cease on May 23, 2019." *Id.* ¶ 12 (internal quotation marks omitted; alteration in Complaint).

According to the Complaint, Jennings's time at FSU, although brief, "was filled with a number of achievements." *Id.* ¶ 13. For example, plaintiff obtained a "PELEF grant to initiate student research projects"; coauthored "a published, peer-reviewed paper"; "served on the Faculty Workload and Compensation Subcommittee," as well as "the Americans with Disabilities Act and Equal Employment opportunity Advisory Group"; served as "an abstract reviewer for the Annual Biomedical Research Conference for Minority Students"; and served "as a member of a graduate student's thesis committee." *Id*. ¶ 13. In addition, plaintiff "served as a board member of a local disability service and advocacy group, called Resources for Independence . . . ." *Id.* (internal quotation marks omitted). And, Jennings "worked on an initiative to make the city of Frostburg more accessible to disabled people." *Id.*

Events that led to the non-renewal allegedly began in the fall of 2017. *Id.* ¶ 16. "At that time, and on numerous occasions thereafter, Plaintiff sought several modifications to his physical workspace as reasonable accommodations for his disability." *Id.* For example, Jennings "requested that power door openers be installed on the doors to the bathrooms and to the laboratory,[1]" and he sought "an accessible demonstration bench and wider aisles, both of which would assist him with his teaching." *Id.* But, defendants did not make the requested accommodations. *Id.*

Jennings alleges that at FSU, "[i]n the early years of any full-time, tenure-track assistant professor's time," defendants use "an evaluative process that culminates with the University President's decision to renew or not renew said assistant professor's contract for an addition [sic] school year." *Id.* ¶ 17. This process begins with a "'Renewal Evaluation' prepared by various members of the department faculty, followed by separate recommendations for renewal or non-renewal by the Dean of the college at issue and the Provost for the University." *Id.* Plaintiff identified Dorothy I. Campbell, Ph.D. as the Interim Dean and Elizabeth A. Throop, Ph.D. as the Provost. *See id.* ¶ 11 n.2; *id.* ¶ 23.

Further, Jennings asserts that he was subjected to disparate and discriminatory treatment throughout his evaluative process, because of his disability. *Id.* ¶ 18. In particular, plaintiff complains that, "despite the fact that Plaintiff met or exceeded the faculty handbook's standards for the evaluative criteria, Defendants chose to nonetheless focus heavily, and almost exclusively, upon the reviews generated by students of Plaintiff." *Id.* ¶ 19. According to Jennings, the emphasis on student reviews "created several discriminatory dynamics." *Id.* ¶ 20. Specifically, Jennings contends that these reviews were influenced by "the implicit (and perhaps not so implicit) discriminatory biases that exist within students against Plaintiff as a wheelchair-bound professor."

4

*Id.*³ Although defendants "expressed awareness of this aspect of the process,[ ]" plaintiff indicates that they "still chose to ignore it." *Id.*

Moreover, plaintiff alleges that student reviews "were all but ignored in making the assessment to renew or not renew other assistant professors." *Id.* ¶ 21. Plaintiff notes that "the over-reliance upon student reviews" in his evaluation was especially "egregious considering that no member of his department had ever even taken the time to witness Plaintiff's teaching style and process in person." *Id.*

Jennings "observed [this discrepancy] personally when he was called upon to review fellow assistant professors." *Id.* And, he states that other faculty members were aware of this dynamic. *Id.* He identified three "[a]ble-bodied assistant professors whose student reviews were scrutinized far less harshly and who were otherwise permitted, unlike Plaintiff, to essentially 'sail through' the Renewal Evaluation process . . . ." *Id.* They are Daniel Hocking, Ph.D.; Franklin Hughes, D.C.; and Jered Studinski, Ph.D. *Id.*

Furthermore, Jennings complains that, "astonishingly," defendants "chose to take into account, in making their non-renewal decision regarding Plaintiff, the fact that Plaintiff had, according to his students, failed to physically demonstrate certain techniques in conducting his labs." *Id.* ¶ 22. According to the Complaint, "no one ever told Plaintiff that there was a need to engage in such demonstrations." *Id.* And, Jennings asserts that "highlighting of his non-performance of this task discriminatorily fails to account for the fact that Plaintiff literally cannot do this as a disabled worker." *Id.*

---

³ Yet, Jennings states that he also received "rave reviews from many of his students." *Id.* ¶ 20.

Plaintiff indicates that in November 2018, he advised both Dean Campbell and Provost Throop of his concerns as to the inclusion of this metric in his evaluative process. *Id.* ¶ 22 n.4. Specifically, in a letter to Dean Campbell, plaintiff wrote: "'Given that the Department now mandates the demonstration of every technique, which is physically impossible for me to do, I ask that the Department work with me to obtain reasonable accommodations that would enable me to fulfill the obligation.[ ]'" *Id.* ¶ 22. Jennings also expressed concerns to Dean Campbell regarding the discriminatory treatment to which he had been subjected, including the over-reliance on student reviews in his Renewal Evaluation, as well as his reasonable accommodation requests. *Id.* ¶¶ 16 n.2, 20 n.3, 22 n.5.

Notwithstanding plaintiff's complaints and concerns, in November 2018 Dean Campbell and Provost Throop each recommended non-renewal of plaintiff's contract with Frostburg. *Id.* ¶ 23. And, in support of their recommendations, Dean Campbell and Provost Throop "fully adopted the reasoning" of the "initial discriminatory 'Renewal Evaluation' prepared concerning Plaintiff." *Id.* ¶ 23 n.6.

Thereafter, on December 5, 2018, plaintiff appealed the decisions of Dean Campbell and Provost Throop to the Faculty Appeals Committee. *Id.* ¶ 24. On December 13, 2018, while the appeal was pending, President Nowaczyk determined not to renew plaintiff's contract. *Id.* "Ultimately, no decision was ever made by the Committee in relation to [plaintiff's] appeal." *Id.* Accordingly, Jennings's "employment with Defendants came to an end in May 2019, at the conclusion of the spring semester." *Id.* ¶ 25. Thereafter, plaintiff remained unemployed until the fall of 2020. *Id.*

The Complaint reflects that on March 14, 2019, plaintiff "filed an executed Charge of Discrimination" against FSU and President Nowaczyk with the Equal Employment Opportunity

Commission ("EEOC"). *Id.* ¶¶ 26-27. The Charge asserted that plaintiff "was discriminated and retaliated against on the basis of his disability." *Id.* ¶ 26. A Notice of the Charge was provided to FSU on March 19, 2019. *Id.* ¶ 27. And, plaintiff states that the Complaint "is being filed more than 180 days after Plaintiff's filing of the Charge.[ ]" *Id.* ¶ 28.[4] Indeed, the suit was filed in State court on October 30, 2020. It was removed to this Court on March 16, 2021. ECF 1.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The

---

[4] The Complaint states that "[t]he EEOC subsequently issued Plaintiff a Notice [of] Suit Rights," which advised Jennings that he had 90 days to pursue his claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* ECF 2, ¶ 28 n.7. Plaintiff concedes that his suit was filed after the expiration of this ninety-day window. But, he states that he is "not pursuing claims under Title I of the ADA in this Complaint." *Id.*

rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co*., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cnty*., 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R.*

*Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

### III.    Discussion

The Motion challenges the viability of the Complaint as to three of the defendants: USM, the Board, as well as President Nowacyzk, in both his official and individual capacities. *See* ECF 12-1 at 1. In particular, defendants aver that plaintiff has failed to plead "any facts against the Board or USM separate and apart from his claims against FSU," and thus "FSU is the only appropriate defendant in this employment case." *Id.* at 3. And, according to the Motion, President Nowaczyk should be dismissed from the suit because "neither MFEPA nor Section 504 permit individual liability." *Id.*

I shall address each argument, in turn.

### A.  USM and the Board

The Motion seeks dismissal of USM and the Board because "neither entity employed Plaintiff," they were not properly named as defendants, and, in defendants' view, the allegations in the Complaint are insufficient to plead a claim against these parties. *Id.* at 2. Specifically, defendants contend that the Complaint concerns only the actions of FSU and its officials, "including FSU's decision to not renew Plaintiff's teaching contract to teach at FSU." *Id*. at 3. According to defendants, absent facts concerning the involvement of USM or the Board with respect to plaintiff's employment or termination at Frostburg, the Complaint fails to state a claim against either defendant. *Id.* (citing *Green v. Burburow*, PJM-06-1608, 2007 WL 9754333, at *1 (D. Md. Mar. 23, 2007)).

Plaintiff rejects this assertion, pointing out that the Complaint avers that FSU "'is one of the many institutions overseen and administered by Defendant University System of Maryland and its Board of Regents.'"  ECF 16-1 at 2 (quoting ECF 2, ¶ 2).  And, Jennings notes that USM is an agency of the State.  *Id.* at 3.  Further, he contends that in all of the counts, USM and the Board are identified as plaintiff's employer "within the scope and meaning of the statute at issue in the given count."  ECF 16-1 at 3 (citing ECF 2, ¶¶ 30, 47, 66, 74, 84, 91).  Moreover, according to plaintiff, "in the [MFEPA] counts in particular, there is a further reference to the fact that said Defendants can 'otherwise be held liable under said Act' with several citations to various sections of the [MFEPA] thereafter.[ ]"  ECF 16-1 at 3 (citing ECF 2, ¶¶ 30, 47, 66, 74, 84, 91).

In the Reply (ECF 19), defendants argue that "although Plaintiff asserts that FSU is 'overseen and administered' by the Board and USM, he does not allege that either the Board or USM were [sic] involved in any of the challenged personnel actions at issue in this case."  *Id.* at 5 (internal citation omitted).

Under Maryland law, USM is an "instrumentality of the State" and an "independent unit of State government."  Md. Code (2018 Repl. Vol., 2019 Supp.), §§ 12-102(a)(2), (3) of the Education Article ("Educ.").  Governance of the USM is vested in the Board.  *Id.* § 12–102(b).  Furthermore, the Board "[i]s responsible for the management of the University System of Maryland and has all the powers, rights, and privileges that go with that responsibility."  *Id.* § 12–104(c)(1).  And, of pertinence here, under Educ. § 12-104(b)(3) the Board may "Sue and be sued, complain, and defend in all courts."

FSU is a "constituent institution" of USM, and by statute, FSU is "[u]nder the jurisdiction of the Board of Regents."  *Id.* § 12-101(6)(vii).  In addition, under Maryland law, the President of FSU is appointed by the Board to serve as the "chief executive officer of the institution," is

"responsible and accountable to the Board for the discipline and successful conduct of the institution and supervision of each of its departments," and "serves at the pleasure of the Board of Regents." *Id.* § 12-109(a), (c), (d)(1)-(2). And, Educ. § 12–104(k)(1)(ii) states that the Board

> shall delegate to the president of each constituent institution authority needed to manage that institution, including authority to make and implement policies promoting the mission of that institution, including the authority to establish policies appropriate to the institution's mission, size, location and financial resources.

Judges of this court have previously concluded that, in light of the authority and control that the Board and USM may exercise over the constituent institutions, both entities may be held liable for unlawful conduct committed by the employees of at these institutions. *See*, *e.g.*, *Innes v. Bd. of Regents of Univ. Sys. of Md.*, 29 F. Supp. 3d 566, 576-77 (D. Md. 2014); *Pavlovic v. Univ. of Md. Balt. Cnty.,* MJG-13-983, 2013 WL 4775530, at *4 (D. Md. Sept. 4, 2013); *Jean v. Bd. of Regents of Univ. Sys. of Md.*, WDQ-13-117, 2013 WL 3873948, at *2 (D. Md. Jul. 24, 2013). In *Jean*, 2013 WL 3873948, Judge Quarles explained (alterations added):

> The Board asserts that from this structure, it is not responsible for any violations of the ADA by [a constituent university]. Other than the statute, it has not provided any authority for this proposition, nor has the Court found any. Although the Board's management of [the constituent university] has been delegated to [the President of the constituent university] by statute, *see* Md. Code Ann., Educ. § 12-104(k)(1), the statute is equally clear that the Board retains ultimate responsibility for the entire University System. *See id.* §§ 12-104(c)(1), 12-109(d)(2). Combined with the Board's capacity to "sue and be sued," *id.* § 12-104(b)(3), these provisions indicate that the Board is a proper defendant in this case. Accordingly, the motion to dismiss will be denied.

Likewise, in *Innes*, 29 F. Supp. 3d at 569, 571, Judge Chasanow determined that the Board could be held liable for the failure of the University of Maryland, College Park to accommodate deaf spectators at the Capital One Field at Byrd Stadium and Comcast Center, in violation of the ADA and the Rehabilitation Act. She reasoned, in relevant part, *id.* at 575-76:

Defendants argue that the Board of Regents should be dismissed from this lawsuit because the statute "plainly intends to remove the Board of Regents from the day-to-day operations and hands-on, detailed management of the innumerable aspects involved in running the many schools within the university system." (ECF No. 39, at 9).  But as Plaintiffs point out, the Board of Regents has ultimate control over the University of Maryland.  Defendants are correct that the Board of Regents can delegate authority to the presidents of the various universities it oversees, but, as an example of how the Board of Regents retains ultimate control, "[a]ny delegation of authority may be modified or rescinded by the Board of Regents at any time in whole or in part."  Md. Code Ann., Educ. § 12-104(k)(2).

Defendants attempt to distinguish *Innes* and *Jean* on the ground that neither case involved an allegation of employment discrimination or retaliation.  *See* ECF 19 at 5.  Moreover, they argue that, unlike the plaintiffs in *Jean* or *Innes*, Jennings has set forth no facts to suggest that "the Board or USM employed Plaintiff or were involved in FSU's decisions with respect to his employment." *Id.* at 6.  In particular, they argue that the plaintiffs in *Innes* "notified all of the defendants, including the Board, of their need for auxiliary aids," as an accommodation for their disabilities. *Id.* at 6 n.3 (citing *Innes*, 29 F. Supp. 3d at 570).

As an initial matter, Jennings, like the plaintiffs in *Innes* and *Jean*, asserts a claim for failure to accommodate in Counts V and VI of the Complaint.  *See* ECF 2, ¶¶ 83-98.  But, even if he had not done so, defendants' proffered distinctions make no difference.  *See*, *e.g.*, *Pavlovic*, 2013 WL 4775530, at **4-5 (allowing plaintiff to bring a Title VII claim for employment discrimination and retaliation against the Board); *Neal v. Univ. of North Carolina*, 5:17-cv-186-BR, 2018 WL 2027730, at *7 (E.D.N.C. May 1, 2018) (concluding that the plaintiff may bring a claim for disability discrimination against the University of North Carolina ("UNC") for conduct that occurred at one of its constituent institutions, because "UNC maintains responsibility for the management of the [constituent institution] and has the capacity to be sued . . . .").

Furthermore, the outcomes in *Innes* and *Jean* did not turn on the level of involvement of USM or the Board with regard to the underlying conduct.  Rather, the decisions turned on the

13

degree of control that the Board and the USM may exercise over their constituent institutions.  *See Jean*, 2013 WL 3873948, at *2; *Innes*, 29 F. Supp. 3d at 576-77.  And, the defense offers no legal authority to support the proposition that the degree of involvement is a factor in resolution of a motion to dismiss.

In sum, I am persuaded that plaintiff has stated plausible claims for relief as to the Board and USM.

### B.  President Nowacyzk

The Motion also seeks dismissal of the suit as to President Nowaczyk.  *See* ECF 12-1 at 3-4.  In particular, defendants assert that "neither the MFEPA nor Section 504 of the Rehabilitation Act allow for claims against individual defendants in either their individual or Official Capacities."  *Id.* at 3 (citations omitted).

Plaintiff rejects these contentions.  First, Jennings urges the Court to read the MFEPA as providing for "the imposition of personal liability against a supervisory employee in his or her individual capacity, particularly one, like Defendant Nowaczyk, who works for a governmental entity."  ECF 16-1 at 9.  However, plaintiff acknowledges, "without officially conceding the point," that this Court has previously found that a party may not lodge a Rehabilitation Act claim against a supervisory employee in his individual capacity.  *Id.* at 12.  In any event, Jennings urges the Court to allow President Nowaczyk to remain a defendant in the suit in his official capacity.  *Id.* at 8.

#### 1.  The MFEPA

The MFEPA "is the state law analogue of Title VII."  *Alexander v. Marriott Int'l, Inc.*, RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); *see also Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8, 914 A.2d 735, 743 n.8 (2007).   Maryland courts

interpreting MFEPA have often found federal cases arising under Title VII to be persuasive authority. *See, e.g.*, *Taylor v. Giant of Md., LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Molesworth v. Brandon*, 341 Md. 621, 632–33, 672 A.2d 608, 614 (1996); *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494, 578 A.2d 766, 772 (1990); *Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 200 n.8, 66 A.3d 1152, 1166 n.8 (2013).

As defendants point out, the MFEPA does not provide for individual liability. *See Hayes v. Md. Transit Admin.*, RBD-18-0691, 2018 WL 5809681, at *9 (D. Md. Nov. 6, 2018); *Jackson v. Balt. Police Dep't*, WDQ-11-3569, 2013 WL 1121412, at *4 n.14 (D. Md. March 15, 2013); *Brown v. Balt. Police Dep't*, RBD-11-136, 2011 WL 645366, at *14 (D. Md. Dec. 21, 2011). And, Maryland courts have previously suggested that the definition of employer under the MFEPA should not be read to impose individual liability against supervisory employees. *See, e.g.*, *Eichen v. Jackson and Tull Chartered Engineers*, CAL-16-02144, 2019 WL 3968330, at *9 (Md. App. Aug. 22, 2019) (explaining that "a claim for illegal termination on the basis of age lies against [plaintiff's] employer . . . not against [his supervisor]") (citing S.G. § 20-606 and *Shabazz v. Bob Evans Farm, Inc.*, 163 Md. App. 602, 629-30, 881 A.2d 1212, 1228-29 (2005)). Instead, an employee may lodge a claim for employment discrimination under the MFEPA only as to his employer. *See Hayes*, RBD-18-0691, at *8.

Plaintiff attempts to circumvent this well established limitation by urging the Court to consider two of the MFEPA's provisions that, in his view, "appear to be unique to that Act (compared to the federal laws) . . . ." ECF 16-1 at 9. In particular, Jennings points out that S.G. § 20-901 expressly proscribes any "unit, officer,[ ] or employee of the State" from engaging in "a discriminatory act prohibited by . . . § 20-606 . . . of this title." ECF 16-1 at 10 (citation and emphasis omitted).

15

S.G. § 20-606(a)(1) specifies, in pertinent part, that "an employer may not . . . (1) fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's . . . disability . . . ." In addition, S.G. § 20-606(a)(3) bars an employer from "fail[ing] or refus[ing] to make a reasonable accommodation for the known disability of an otherwise qualified employee." And, of import here, an "employer" is defined as "a person that . . . is engaged in an industry or business" and "has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year," or "an agent" of such a person. S.G. § 20-601(d)(1).

In plaintiff's view, invocation of "officer or employee" in § 20-901 would be rendered superfluous if the MFEPA were to be read as foreclosing individual liability. *Id.* Moreover, he notes that, under Educ. § 12-109(d)(1), the president of each constituent institution serves as the chief executive officer of the institution. ECF 16-1 at 10. Therefore, he contends that Nowaczyk "is clearly an 'officer' within the meaning" of § 12-109 of the State Government Article. *Id.* at 10 n.7.

In addition, plaintiff argues that the MFEPA "disallows certain 'prohibited acts' for which someone in the role of Defendant Nowaczyk could also be held personally liable." *Id.* (citing S.G. § 801). Accordingly, in Jennings's view, this provision "would allow for liability on the part of someone other than a traditional employer." ECF 16-1 at 11 (internal quotation marks omitted).

The problem with plaintiff's arguments is that it ignores the way in which these provisions fit within the MFEPA as a whole. Indeed, as defendants point out (ECF 19 at 3), the only private right of action made available under the MFEPA is found in S.G. § 20-1013. This provision specifies that "a complainant may bring a civil action against the respondent alleging an unlawful

employment practice . . . ." S.G. § 20-1013. An "unlawful employment practice" is defined as "an act that is prohibited under § 20-606 of this title," *id.* § 20-1001. In turn, as earlier specified, S.G. § 20-606 only prohibits actions taken by "an employer."

Furthermore, as defendants point out, the reference in S.G. § 20-601(a) to "an agent" of an employer does not extend liability under the MFEPA to supervisory employees. *See* ECF 19 at 5 n.2. Rather, as the Fourth Circuit has explained, this language was meant to "establish a limit on an employer's liability for its employees' actions." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). To be sure, *Lissau* construed the term "employer," as defined under Title VII. 159 F.3d at 180-81. But, this definition is nearly identical to the definition of an employer under the MFEPA. *See* 42 U.S.C. § 2000e(b); S.G. § 20-601(d)(1).

Thus, despite plaintiff's protestations to the contrary, the MFEPA does not provide plaintiff with a cause of action against supervisory employees. Accordingly, Jennings's MFEPA claims against President Nowaczyk, in his individual capacity, are subject to dismissal.

### 2. Rehabilitation Act

#### a. Individual Capacity

Plaintiff's Rehabilitation Act claims against President Nowaczyk, in his individual capacity, fare no better.

Plaintiff has not sued under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). But, Title II of the ADA is closely related to § 504 of the Rehabilitation Act. Title II of the ADA prohibits public entities, including any State government or instrumentality of the State, from discriminating against a qualified individual with a disability. *Id.* §§ 12131(1), 12132. Notably, to "the extent possible, [courts] construe similar provisions in the two statutes consistently." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th

Cir. 2002). *See Seremeth v. Board of County Commr's of Frederick Co.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'") (citation omitted); *Rogers v. Dept. of Health & Environmental Control*, 174 F.3d 431, 433-34 (4th Cir. 1999) (stating that courts may apply Rehabilitation Act precedent in interpreting the ADA, and vice versa). Indeed, the statutes "share the same definitions of disability," *id.* at 433, and Title II of the ADA explicitly provides that "[t]he remedies, procedures, and rights" provided under § 504 of the Rehabilitation Act "shall be the remedies, procedures, and rights [that Title II of the ADA] provides to any person alleging discrimination on the basis of disability. . . ." 42 U.S.C. § 12133.

Of import here, the ADA does not provide for private actions against individual defendants who are not employers. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam) ("[T]he ADA . . . do[es] not provide for causes of action against defendants in their individual capacities."); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (noting that "Title VII does not provide a remedy against individual defendants who do not qualify as 'employers'" and extending that holding to the ADA). Therefore, ADA claims against defendants in their individual capacities are subject to dismissal. The same rationale applies to the claims under the Rehabilitation Act.

The judges of this Court have repeatedly said that "there is no individual liability for supervisors under the Rehabilitation Act." *Stiner v. Bd. of Educ. of Cecil Cnty. Md.*, 2014 WL 69111, at *3 (D. Md. Jan. 7, 2014); *see, e.g.*, *Mattison v. Maryland Transit Admin.*, RDB-15-1627, 2016 WL 2898020, at *5 (D. Md. May 18, 2016); *McCoy v. Conroy*, WDQ-01-1581, 2015 WL 1081529, at *3 (D. Md. Mar. 9, 2015); *Young v. Barthlow,* RWT–07–662, 2007 WL 5253983, at *2 (D. Md. Nov.7, 2007) ("Individual liability is not contemplated under § 504 of

[the Rehabilitation Act].") *aff'd*, 267 F. App'x 250 (4th Cir. 2008)).  Accordingly, plaintiff's claims under the Rehabilitation Act as to President Nowaczyk, in his individual capacity, must be dismissed.

### b.  Official Capacity

Plaintiff also seeks to maintain his causes of action against President Nowaczyk in his official capacity.  ECF 16-1 at 8-9.  In particular,  Jennings insists that plaintiff's arguments do not bar President Nowaczyk's inclusion in the suit in his official capacity, because "a discrimination lawsuit brought against an agent of governmental entity, in his or her official capacity, is considered the same thing as a suit against the entity itself." *Id.* at 8 (emphasis and citations omitted).

Plaintiff concedes that suit against President Nowaczyk in his official capacity "could be construed as, perhaps, a bit redundant to the suit against the other Defendants. . . ." *Id.* at 8 n.5. But, in plaintiff's view, "such redundancy does not require his dismissal," arguing that "[t]here is value in expressly naming the person(s) in their official capacity whom a plaintiff . . . alleges engaged in wrongdoing, and then allowing the Court and/or a jury to remain cognizant of that dynamic as they consider the allegations and assess liability." *Id.* (citing *Duncan v. Prince George's Cnty*, PX-18-1378, 2018 WL 6621503, at **3-4 (D. Md. Dec. 18, 2018) and *Chase v. Cty. of Portsmouth*, 428 F. Supp. 2d 487, 489-90 (E.D. Va. 2006)).

To be sure, plaintiff's claim against President Nowaczyk in his official capacity is essentially a claim against the State.  Therefore, it is duplicative of his claim against the remaining defendants.  *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).  But, "dismissal" of a duplicative claim "is not required." *Duncan*, 2018 WL 6621503, at *3 (citing *Fink v. Richmond*, DKC-07-0714, 2009 WL 3216117, at *4 (D. Md. Sept. 29, 2009), *aff'd*, 405 F. App'x 719 (4th Cir.

2010) and *Henderson v. Gilbert*, JFM-06-1284, 2006 WL 19966797, at *2 n.1 (D. Md. Jul. 10, 2006)).

Moreover, where, as here, a plaintiff asserts that a particular individual violated his rights, providing for suit to go forward against that individual in his official capacity may "provide a certain level of public accountability." *Chase*, 428 F. Supp. 2d at 490 (E.D. Va. 2006); *see Duncan*, 2018 WL 6621503, at * 3 (allowing plaintiff to maintain a duplicative cause of action against an unelected State official in his official capacity for the purposes of promoting public accountability). And, because all defendants are represented by the same attorney, no prejudice will accrue if President Nowaczyk were to remain in the case in his official capacity. *See Taylor v. Cty. of Columbia*, 3:07-983-JFA-JRM, 2008 WL 612779, at *4 (D.S.C. Feb. 29, 2008). For these reasons, I shall allow plaintiff to maintain his cause of action against President Nowaczyk in his official capacity.

### IV.    Conclusion

For the reasons stated above, the Motion is granted in part and denied in part. The Complaint shall be dismissed as to President Nowaczyk in his individual capacity. However, the Motion is otherwise denied.

An Order follows, consistent with this Memorandum Opinion.


Date: December 16, 2021                       /s/
                                   Ellen L. Hollander
                                   United States District Judge